**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NICOLE GRANADOS, | Civil Action No. 13-781 (JLL) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**LINARES**, District Judge.

Before the Court is Nicole Granados ("Plaintiff" or "Claimant")'s appeal seeking review of a final determination by Administrative Law Judge ("ALJ") Richard West denying her application for supplemental security income. The Court resolves this matter on the Parties' briefs pursuant to Local Civil Rule 9.1(f). For the reasons below, the Court affirms the final decision of the Commissioner of Social Security.

## I.    BACKGROUND

### A.    Plaintiff's Working History and Activities of Daily Living

Plaintiff was born on March 16, 1978, and has a high school education. (R. at 45).[1] She has worked as a cashier at fast food restaurants and supermarkets and as a parking lot security guard. (*Id.* at 46-48). All of these jobs required Plaintiff to stand throughout the workday. (*Id.* at 49). Plaintiff's annual earnings from these jobs never totaled more than $5000 from 1998 through 2010. (*Id.* at 120).

---

[1] "R." refers to the pages of the Administrative Record.

In June 2009, Plaintiff reported that she lives in an apartment with her family and cares for her four children. (*Id.* at 136). She shops for her family once a month, cooks for them once a week, washes dishes while seated in a chair, and helps her children get dressed and complete their homework. (*Id.* at 1236, 138-39). Plaintiff can clean her apartment to a limited extent—she sweeps while seated in a chair, but has her children lift things up to sweep beneath them. (*Id.* at 138). Plaintiff also has her children mop for her. (*Id.*). While in her apartment, Plaintiff watches television for four hours a day, reads, and colors. (*Id.* at 138-39). Plaintiff goes outside daily and uses public transportation. (*Id.* at 138-39). She also socializes with others daily, attends church weekly, and visits a community center monthly. (*Id.* at 140).

Plaintiff claims that her impairments make it difficult for her to get up from low toilets and sleep. (*Id.* at 137). To help her sleep, Plaintiff takes sleeping pills. (*Id.* at 52). Plaintiff also claims that her impairments prevent her from washing her back and braiding her hair. (*Id.* at 137). Due to her impairments, Plaintiff claimed in June 2009, that she could lift only fifteen pounds, sit for less than one hour, walk two blocks, and climb four steps at a time. (*Id.* at 141). Plaintiff also then claimed that she had difficulty bending and kneeling because of knee and leg pains. (*Id.*). At the administrative hearing in May 2011, Plaintiff claimed that she could lift a gallon of milk with only her left hand, stand and sit for only fifteen minutes, and slowly walk about one and a half blocks. (*Id.* at 59-61).

B.     Plaintiff's Medical History

Plaintiff contends that she is disabled due to her (1) back problems, (2) degenerative joint disease in her right knee, (3) carpal tunnel syndrome, (4) obesity, and (5) depression. Plaintiff contends that if she forces herself to work she will overdo it and, as a result, paralyze herself. (*Id.* at 129). A discussion of the evidence pertaining to each of Plaintiff's impairments follows.

2

1. <u>Plaintiff's Back Problems</u>

Plaintiff contends that she has pain in her neck, shoulders, arms, back, hips, legs, and feet. (*Id.* at 50-53). To treat her pain, Plaintiff takes prescription pain medication—Percocet—every four hours, which she claims is helpful, but makes her drowsy. (*Id.* at 58). In February 2004, an MRI performed on Plaintiff's lumbar spine documented degenerative disc disease. (*Id.* at 229). Specifically, the MRI revealed mild disc bulging and bilateral neural foraminal stenosis at the L4-L5 and L5-S1 discs. (*Id.*). In February 2005, an MRI performed on Plaintiff's cervical spine revealed straightening of Plaintiff's cervical spinal curvature consistent with muscle spasm. (*Id.* at 228).

When Plaintiff filed her application for benefits on April 1, 2009, the interviewer at the social security office noted that Plaintiff had no difficulty standing, walking, or sitting. (*Id.* at 126-27). The interviewer also did not recognize any physical inabilities in Plaintiff. (*Id.* at 126).

On April 24, 2009, one of Plaintiff's treating physicians, Dr. Farouk Al-Salihi, diagnosed Plaintiff with herniated lumbosacral disc disease. (*Id.* at 230). In September 2009, however, an X-ray administered by Dr. Edward Burak revealed "normal" lumbosacral and cervical spines, maintained disc spaces, and no evidence of fracture or malalignment. (*Id.* at 237). Also in September 2009, State Consultative Examiner Dr. Mariam Rubbani conducted a physical examination of Plaintiff. (*Id.* at 235-36). At that time, Plaintiff was able to transfer to and from the exam table without assistance. (*Id.* at 235). Plaintiff told Dr. Rubbani that she had a history of scoliosis and herniated discs in her neck and lower back. (*Id.*). Dr. Rubbani noted that Plaintiff's cervical spine ranging was limited more on the right than on the left. (*Id.*). Additionally, Dr. Rubbani noted that Plaintiff's lumbar spine ranging was limited and that she had lumbar pain on palpation. (*Id.*). Dr. Rubbani also noted that Plaintiff had elevated left

shoulder and scapular heights as compared to her right shoulder, and positive right-sided trapezius muscle tenderness. (*Id.*). Dr. Rubbani further noted that Plaintiff's tests for bilateral straight leg raising, sensory loss, reflex loss, and muscle weakness were all negative, and that Plaintiff deferred walking on her heels and toes. (*Id.* at 235-36). Dr. Rubbani diagnosed Plaintiff with cervical myofascial pain, lumbar myofascial pain, and scoliosis. (*Id.* at 236).

In April 2010, one of Plaintiff's treating physicians, Dr. Felix Roque, noted that Plaintiff's straight leg raising test revealed 40 degree movement in both the supine and seating position. (*Id.* at 267-69). According to Plaintiff, the most invasive treatment that she received for her back impairments was steroid injections from Dr. Roque. (*Id.* at 56-57). Plaintiff claims that she had Dr. Roque administer such injections in 2005, but that she no longer receives them because her insurance does not cover the costs. (*Id.* at 56-58). Instead, as discussed above, she takes pain medication. (*Id.* at 58). In an April 2011 medical report, Dr. Roque noted that Plaintiff's pain medication provided her with relief and that she had stated that her pain was stable. (*Id.* at 360-61).

In May 2011, Dr. Al-Salihi completed a RFC form in which he noted that Plaintiff has lumbosacral disc disease. (*Id.* at 370-73). Notably, Dr. Al-Salihi did not describe Plaintiff's lumbosacral disc disease as "herniated" at that time. (*Id.*).

### 2. Plaintiff's Degenerative Joint Disease in Her Right Knee

In February 2005, an MRI performed on Plaintiff's right knee revealed that Plaintiff's knee was "normal." (*Id.* at 228). In September 2009, Dr. Rubbani noted that Plaintiff's gait was tandem, heel-to-toe, and mildly antalgic. (*Id.* at 236). Dr. Rubbani also noted that Plaintiff had difficulty walking on her heels and toes due to her knee pain and that she could squat only halfway down. (*Id.* at 235-36). However, Dr. Rubbani noted that Plaintiff did not use a

handheld assistive device. (*Id.*). Dr. Rubbani diagnosed Plaintiff with degenerative joint disease of the right knee with medial joint line tenderness with crepitus. (*Id.* at 236).

### 3.    Plaintiff's Carpal Tunnel Syndrome

Plaintiff maintains that she has intermittent numbness, pain, and locking in both of her hands. (*Id.* at 53). In June 2008, Dr. Roque clinically diagnosed carpal tunnel syndrome in Plaintiff's right hand through a positive Tinel's test. (*Id.* at 331). When Plaintiff filed her application for benefits in April 2009, the interviewer at the social security office noted that Plaintiff had no difficulty using her hands or writing. (*Id.* at 126-27). In fact, the interviewer noted that he recognized no physical inabilities. (*Id.* at 126). In September 2009, Dr. Rubbani noted that Plaintiff had a positive right-sided carpal compression test. (*Id.* at 235). At that time, Dr. Rubbani also noted that Plaintiff could dress and undress without assistance, separate papers, and button buttons. (*Id.*).

### 4.    Plaintiff's Obesity

Plaintiff is obese. When Plaintiff filed her application for benefits in April 2009, she was 5' 5" tall and weighed 220 pounds. (*Id.* at 128). At the time of the administrative hearing in May 2011, Plaintiff was 5' 5" tall and weighed 275 pounds. (*Id.* at 62). Plaintiff then contended "the more weight I lose, the more pain I have." (*Id.*). In April 2009, Dr. Al-Salihi noted that Plaintiff had asthma and mild hypertension. (*Id.* at 230). In his May 2011 RFC form, Dr. Al-Salihi again noted that Plaintiff had asthma, but did not even mention that Plaintiff had hypertension. (*Id.* at 370-73).

### 5.    Plaintiff's Depression

In April 2009, Dr. Al-Salihi noted that Plaintiff suffered from depression, but did not describe Plaintiff's symptoms. (*Id.* at 230). When Plaintiff filed her application for benefits that

month, the interviewer at the social security office noted that Plaintiff had no apparent difficulty concentrating, understanding, talking, or answering. (*Id.* at 126-27).

In September 2009, State Consultative Examiner Dr. Jennifer C. Figurelli conducted a psychological evaluation of Plaintiff. (*Id.* at 231-33). Plaintiff told Dr. Figurelli her psychiatric history. (*Id.* at 232). Plaintiff explained that she had never been hospitalized for a psychiatric condition, but that she met with a psychiatrist monthly for almost ten years. (*Id.*). Plaintiff apparently stopped seeing this psychiatrist shortly before meeting with Dr. Figurelli. (*See id.*). Plaintiff also told Dr. Figurelli that her primary care physician had prescribed her Xanax. (*Id.*). Additionally, Plaintiff told Dr. Figurelli that she felt lonely and sad about every other day and had diminished energy, difficulty falling asleep, and a poor appetite. (*Id.* at 233). Plaintiff also said that she cried three to four times a week. (*Id.*). Dr. Figurelli noted that Plaintiff had a normal orientation, appropriate mood, sad affect, and difficulty concentrating. (*Id.* at 232-33). Dr. Figurelli also noted that Plaintiff could spell the word "world" both forward and backward, recall three out of four words after five minutes, and perform double-digit calculations. (*Id.* at 233). However, according to Dr. Figurelli, Plaintiff was unable to do the serial sevens math problem. (*Id.*). Dr. Figurelli diagnosed Plaintiff with depression and assigned Plaintiff a global assessment functioning ("GAF") rating of sixty.[2] (*Id.* at 233).

---

[2] The GAF Scale ranges from zero to one-hundred. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) (hereinafter DSM-IV-TR). An individual's "GAF rating is within a particular decile if *either* the symptom severity or the level of functioning falls within the range." *Id.* at 32. "[I]n situations where the individual's symptom severity and level of functioning are discordant, the final GAF rating always reflects the worse of the two." *Id.* at 33. "In most instances, ratings on the GAF Scale should be for the current period (*i.e.*, the level of functioning at the time of the evaluation) because ratings of current functioning will generally reflect the need for treatment or care." *Id.* A GAF rating of fifty-one to sixty indicates that an individual has "[m]oderate symptoms," *e.g.*, "flat affect and circumstantial speech, [or] occasional panic attacks," or "moderate difficulty in social, occupational, or school functioning . . . ." *Id.* at 34.

At the administrative hearing in May 2011, Plaintiff claimed that she suffered from anxiety attacks and that her depression had gotten worse with time. (*Id.* at 61-62). Plaintiff also stated that when she wakes up she beats herself up in her head. (*Id.* at 61).

C.    Procedural History

On April 1, 2009, Plaintiff filed an application for supplemental security income with the Social Security Administration. (*Id.* at 114-16). The Administration denied Plaintiff's application and subsequent request for reconsideration. (*Id.* at 68-72, 75-78). In response, Plaintiff filed a request for a hearing before an ALJ with the Office of Disability Adjudication and Review. (*Id.* at 79-80).

Said hearing occurred before ALJ West on May 3, 2011, in Newark, New Jersey. (*Id.* at 27). A vocational expert did not attend the hearing. (*Id.* at 64). After reviewing the facts of Plaintiff's case, on June 7, 2011, ALJ West issued a decision finding that Plaintiff was not disabled from April 1, 2009, through the date of decision.[3] (*Id.* at 12-23).

Plaintiff sought Appeals Council review. (*Id.* at 7-8). The Appeals Council denied Plaintiff's request on December 4, 2012, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1). As a result, Plaintiff appealed to this Court on February 7, 2013. (Compl. 1-3, ECF No. 1). This Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g).

II.    **LEGAL STANDARD**

A.    The Five-Step Process for Evaluating Whether a Claimant Has a Disability

Under the Social Security Act, the Social Security Administration is authorized to pay supplemental security income to "disabled" persons. 42 U.S.C. § 1382(a). A person is

---

[3] Supplemental security income benefits are not payable for any month prior to the month after the application for such benefits is filed. 20 C.F.R. § 416.335.

"disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(1). At step one, the ALJ assesses whether the claimant is currently performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled and, thus, the process ends. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has a "severe" physical or mental impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). Absent such impairment, the claimant is not disabled. *Id.* Conversely, if the claimant has such impairment, the ALJ proceeds to step three. *Id.* At step three, the ALJ evaluates whether the claimant's severe impairment either meets or equals a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* Otherwise, the ALJ moves on to step four, which involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity [("RFC")]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R.

§ 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, the ALJ

proceeds to the fifth and final step of the process. *Id.*

The claimant bears the burden of proof for steps one through four. *Poulos v. Comm'r of*

*Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir.

2004). "At step five, the burden of proof shifts to the Social Security Administration to show

that the claimant is capable of performing other jobs existing in significant numbers in the

national economy, considering the claimant's age, education, work experience, and [RFC]." *Id.*

(citing *Ramirez*, 372 F.3d at 551).

B.      The Standard of Review: "Substantial Evidence"[4]

This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See*

42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S.

197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence,

this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir.

1984). However, this Court may not "weigh the evidence or substitute its conclusions for those

of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted).

Consequently, this Court may not set an ALJ's decision aside, "even if [it] would have decided

the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations

omitted).

---

[4] Because the regulations governing supplemental security income—20 C.F.R. § 416.920—are identical to those covering disability insurance benefits—20 C.F.R. § 404.1520—this Court will consider case law developed under both regimes. *Rutherford v. Barnhart*, 399 F.3d 546, 551 n. 1 (3d Cir. 2005) (citation omitted).

## III. DISCUSSION

At step one, the ALJ found that Plaintiff "ha[d] not engaged in substantial gainful activity since April 1, 2009, the application date . . . ." (R. at 14). At step two, the ALJ found that Plaintiff's degenerative disc disease, scoliosis, degenerative joint disease, obesity, carpal tunnel syndrome, and depression were severe impairments. (*Id.*). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (*Id.* at 15.). At step four, the ALJ determined that Plaintiff had the following RFC:

> [Plaintiff] has the [RFC] to perform sedentary work, as defined in 20 CFR 416.967(a) except she cannot do any ladder/rope/scaffold climbing or any crouching; cannot do more than occasional ramp/stair climbing, balancing on narrow, slippery or erratically moving surfaces, stooping, kneeling or crawling; must avoid concentrated exposure to temperature extremes, wetness, humidity, dust, etc., and hazards such as unprotected heights or dangerous moving machinery, can only do frequent (as opposed to constant) fingering with her right hand; and can only understand, remember, and carry out simple instructions.

(*Id.* at 17). As Plaintiff was unable to perform her past relevant work as a cashier, the ALJ continued on to step five. (*Id.* at 22). At step five, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (*Id.*). Thus, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 23). Plaintiff contends that the ALJ erred at steps three, four, and five. The Court addresses each of Plaintiff's contentions in turn.

### A. Whether the ALJ Properly Found That Plaintiff Did Not Have an Impairment or Combination of Impairments That Met or Medically Equaled a Listed Impairment

Plaintiff contends that the ALJ's analysis at step three is not based on substantial evidence for two reasons. First, Plaintiff argues that the ALJ failed to properly consider Plaintiff's obesity in combination with her degenerative joint disease in her right knee and spinal

impairments. (Pl. Br. 19-25, ECF No. 8). Second, Plaintiff more generally argues that the ALJ

failed to consider all of Plaintiff's impairments in combination with one another. (*Id.* at 16-19).

The Court will now assess each of Plaintiff's arguments.

1. Whether the ALJ Properly Considered Plaintiff's Obesity in Combination With Her Knee and Spinal Impairments

Plaintiff argues that the ALJ failed at step three to properly consider Plaintiff's obesity in

combination with her degenerative joint disease in her right knee and spinal impairments. (*Id.* at

24). Said failure, according to Plaintiff, violates the Third Circuit's holding in *Burnett* and

Social Security Rulings 00-3p and 02-1p.[5] *Burnett* provides that at step three an ALJ "must

provide a sufficient framework of reasoning for a court to conduct 'meaningful judicial review'

of the ALJ's decision." *Poulos*, 474 F.3d at 93 (quoting *Burnett*, 220 F.3d at 119). In providing

such a framework, there is no formal requirement that the ALJ "use particular language or adhere

to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir.

2004). Rather, the Third Circuit noted in *Poulos* that an ALJ satisfies *Burnett* if she issues her

"step three finding only after reviewing all of the objective medical evidence, including evidence

of [claimant's] obesity, and explicitly state[s] which Listings [she] . . . consider[ed]." 474 F.3d

at 93.

As required by *Polous*, the ALJ here reviewed the objective medical evidence pertaining

to Claimant's obesity before issuing her step three finding. At step two, the ALJ found that

Plaintiff's obesity constituted a severe impairment even though Plaintiff did not initially allege

---

[5] Social Security Ruling 02-1p superseded Social Security Ruling 00-3p. Social Security Ruling 02-1p provides that an ALJ may find at step three that:

> [A] listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments.

that she was disabled due, in part, to her obesity. (R. at 14, 129). In support of this finding, the

ALJ noted that Plaintiff was 5' 5" tall and weighed approximately 275 pounds. (*Id.* at 14). The

ALJ also noted at step two that the combination of Plaintiff's obesity and other impairments

"significantly interfere[d] with [Plaintiff's] abilities to lift, carry, walk and stand." (*Id.* at 15).

At step three, as required by *Poulos*, the ALJ explicitly declared which listings he considered.

(*Id.*). The ALJ also stated at step three that "[t]here is no listing specifically for obesity. Its

effects are considered under other body system(s) affected . . . ." (*Id.*). Consistent with this

statement, the ALJ adequately explained why Plaintiff's degenerative joint disease in her right

knee and spinal impairments did meet the most similar listings—1.02, 1.04A, and 1.04C. The

Court now discusses the ALJ's findings pertaining to each of these listings.

With regard to listing 1.02, that listing is met when a claimant has:

> Major dysfunction of a joint(s) . . . [c]haracterized by gross
> anatomical deformity . . . and chronic joint pain and stiffness with
> signs of limitation of motion or other abnormal motion of the
> affected joint(s), and findings on appropriate medically acceptable
> imaging of joint space narrowing, bony destruction, or ankylosis of
> the affected joint(s) . . . [w]ith . . . [i]nvolvement of one major
> peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting
> in inability to ambulate effectively . . . .

20 C.F.R. Pt. 404, Subpt. P, App'x 1. Here, the ALJ provided adequate relevant evidence in

support of his conclusion that Plaintiff's degenerative joint disease in her right knee did not meet

listing 1.02. Specifically, the ALJ noted that motion in Plaintiff's right knee was "normal" and

that Plaintiff was "not unable to ambulate effectively." (R. at 15).

With regard to listing 1.04A, that listing is met when a claimant has:

> Disorders of the spine . . . , resulting in compromise of a nerve root
> (including the cauda equina) or the spinal cord . . . [w]ith . . .
> [e]vidence of nerve root compression characterized by nuero-
> anatomic distribution of pain, limitation of motion of the spine,
> motor loss (atrophy with associated muscle weakness or muscle

> weakness) accompanied by sensory or reflex loss and, if there is
> involvement of the lower back, positive straight-leg raising test
> (sitting and supine) . . . .

20 C.F.R. Pt. 404, Subpt. P, App'x 1. Here, the ALJ provided adequate relevant evidence in

support of his conclusion that Plaintiff's spinal impairments—degenerative disc disease and

scoliosis—did not meet listing 1.04A. Specifically, the ALJ noted that Plaintiff had virtually no

neurological deficits in a distribution characteristic of nerve root compression in the cervical or

thoracic spine. (R. at 15). The ALJ also noted that Plaintiff did not have a positive straight-leg

raising test in the seated position. (*Id.*).

> With regard to listing 1.04C, that listing is met when a claimant has:

>> Disorders of the spine . . . , resulting in compromise of a nerve root
>> (including the cauda equina) or the spinal cord . . . [w]ith . . .
>> [l]umbar spinal stenosis resulting in pseudoclaudication,
>> established by findings on appropriate medically acceptable
>> imaging, manifested by chronic nonradicular pain and weakness,
>> and resulting in inability to ambulate effectively . . . .

20 C.F.R. Pt. 404, Subpt. P, App'x 1. Here, the ALJ provided adequate relevant evidence in

support of his conclusion that Plaintiff's spinal impairments did not meet listing 1.04C.

Specifically, the ALJ noted that the stenosis in Plaintiff's lumbar spine was at the neural

foramina, and not at the spinal canal. (R. at 15). The ALJ also noted that "the clinical

examinations [did] not reveal persistent non-radicular weakness" and that Plaintiff was not

unable to ambulate effectively. (*Id.*).

> Notably, Plaintiff has failed to undermine the above explanations proffered by the ALJ

since she has failed to point to any evidence in the record demonstrating that the combination of

her obesity with one or more of her other impairments meets a listing. Instead, Plaintiff just

explains why she would have met former listing 9.09 on obesity, which does not help her

argument. *See Poulos*, 474 F.3d at 93 (finding Plaintiff's attempt to invoke former listing 9.09

inapposite). Because Plaintiff has failed to explain how the combination of he obesity with her other impairments meets a listing, the Court finds Plaintiff's contention that the ALJ's step three analysis is not based on substantial evidence unpersuasive. *See id.* at 92-93 (noting that "[t]he claimant bears the ultimate burden of establishing steps one through four" and later noting "that Appellant [did] not argue that the ALJ should have applied a different Listing, nor [did] he point to specific evidence ignored by the ALJ that would indicate that Appellant's impairments are equivalent to one of the Listings the ALJ identified."); *Williams v. Barnhart*, 87 F. App'x 240, 243 (3d Cir. 2004) ("[Plaintiff] argues that the ALJ should have given greater consideration to the 'interrelationship' among her impairments, but she does not explain how this consideration would have differed from the one provided, and we do not understand how it should have."); *see also Neff v. Astrue*, 875 F. Supp. 2d 411, 423 (D. Del. 2013) ("[Plaintiff] fails to point to any evidence in the record in support of the finding that obesity worsened her symptoms. The Court cannot remand the ALJ's decision based on the failure to confront evidence that does not exist. The simple fact that [plaintiff] became obese in 2008 does not automatically justify the conclusion that it significantly worsened her symptoms."). Lastly, the Court notes that the ALJ further demonstrated that he was mindful of the need to consider Plaintiff's obesity since he stated that Plaintiff's "excess body weight," along with her other impairments, caused him to give "limited weight" to some of the Disability Determination Services medical consultant's opinions at step four. (R. at 21).

Even if the Court found that the ALJ's consideration of Plaintiff's obesity at step three did not fulfill *Burnett*, such an error would not warrant remand because it would be harmless. In *Rivera v. Commissioner of Social Security*, the Third Circuit refused to remand an ALJ's step three finding, despite the fact that it was conclusory, because there was "abundant evidence

supporting the position taken by the ALJ, and comparatively little contradictory evidence." 164 F. App'x 260, 263 (3d Cir. 2006). The same can be said here.

### 2. Whether the ALJ Properly Considered All of Plaintiff's Impairments in Combination With One Another

Plaintiff generally argues that the ALJ erred at step three because he did not properly consider whether Plaintiff's impairments, in combination, met or medically equaled a listed impairment. (Pl. Br. 16-19). Defendant counters that the ALJ did in fact consider the combination of Plaintiff's severe impairments since "the ALJ decision's step-three analysis explicitly states that Plaintiff's impairments in combination did not medically equal any listed impairment . . . ." (Def. Br. 7, ECF No. 13).

An ALJ fulfills his obligation to consider a claimant's impairments in combination with one another if the ALJ explicitly indicates that he has done so and there is "no reason not to believe him." *Morrison ex rel. Morrison v. Comm'r of Soc. Sec.*, 268 F. App'x 186, 189 (3d Cir. 2008). Here, the ALJ explicitly indicated at the beginning of his step three discussion that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments . . . ." (R. at 15). The ALJ also indicated at step three that "a comparison of the claimant's impairments with the most similar listings—1.04A, 1.04C, 1.02, 11.4 and 12.04—fails to reveal any impairment or combination of impairments that has been of level severity for the required duration." (*Id.*). Given the ALJ's thorough discussion of the record throughout his opinion, detailed explanation of why each of Plaintiff's impairments did not meet a listing, and statement concerning the combined effect of Plaintiff's impairments at step two,[6] the Court finds no reason to disbelieve the ALJ's indications that he considered the

---

[6] At step two, the ALJ stated that "[t]he combination of the degenerative disc disease, scoliosis, degenerative joint disease, obesity and carpal tunnel syndrome significantly interferes with the claimant's abilities to lift, carry, walk

combined effect of Plaintiff's impairments. *See Jones*, 364 F.3d at 505 (finding ALJ's step three determination adequate because ALJ's decision, "read as a whole," illustrated that ALJ considered the appropriate factors); *see also Gainey v. Astrue*, No. 10-1912, 2011 WL 15660865, *12 (D.N.J. Apr. 25, 2011) (citation omitted) (holding that "ALJ's detailed analysis of the individual impairments and conclusion that Plaintiff did not have 'an impairment or combination of impairments' that met or equaled a listing is sufficient."). In any event, Plaintiff has not "point[ed] to any medical evidence ignored by the ALJ that would show that his impairments medically equaled one of the listings." *See Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146 (3d Cir. 2007) (finding this shortcoming significant). Accordingly, the Court finds that the ALJ's step three findings are based on substantial evidence.

B.     Whether the ALJ's RFC Assessment is Based on Substantial Evidence[7]

RFC is defined as the most that a claimant can still do despite the limitations caused by her impairments. 20 C.F.R. § 416.945(a)(1). Here, the ALJ determined that Plaintiff had the following RFC:

> [T]he claimant has the [RFC] to perform sedentary work, as defined
> in 20 CFR 416.967(a) except she cannot do any
> ladder/rope/scaffold climbing or any crouching; cannot do more
> than occasional ramp/stair climbing, balancing on narrow, slippery
> or erratically moving surfaces, stooping, kneeling or crawling; must
> avoid concentrated exposure to temperature extremes, wetness,
> humidity, dust, etc., and hazards such as unprotected heights or
> dangerous moving machinery, can only do frequent (as opposed to
> constant) fingering with her right hand; and can only understand,
> remember, and carry out simple instructions.

---

and stand." (R. at 15). This statement evinces the ALJ's consideration of the combined effect of Plaintiff's impairments.

[7] To the extent that Plaintiff speculates that the ALJ's RFC assessment at step four was designed to avoid the need for testimony from a vocational expert at step five, the Court will not entertain Plaintiff's speculation as to the ALJ's motive. The task before this Court on appeal is to review whether the ALJ's decision is based on substantial evidence.

(R. at 17). Plaintiff contends that the ALJ's RFC assessment is not based on substantial evidence because the ALJ did not adequately explain five of his findings. (*See* Pl. Br. 25-29).

First, Plaintiff asserts that the ALJ's finding at step four that Plaintiff can sit for six hours in an eight-hour workday is not based on substantial evidence.[8] (Pl. Br. 27). The Court disagrees. The ALJ found Plaintiff's allegation that she could sit for about only fifteen minutes incredible. (R. at 18). In doing so, the ALJ discredited Dr. Al-Salihi's statement that Plaintiff had herniated lumbosacral disc disease, noting that the imaging studies in the record did not confirm herniation and that an MRI showed that Plaintiff's disc bulges and neural foraminal stenosis were just mild. (*Id.*). The ALJ provided further support for his finding by mentioning the relief that Plaintiff received from her pain medications, the generally conservative treatment Plaintiff received for her pain, and the social security office representative's observation that Plaintiff had no apparent difficulty sitting. (*Id.* at 18-19). To the extent that Plaintiff asserts that her obesity somehow prevented her for sitting for six hours, she has not pointed to any evidence in support of this assertion. Thus, the Court finds this conclusory assertion unpersuasive. *See Poulos*, 474 F.3d at 92 (citation omitted) ("The claimant bears the ultimate burden of establishing steps one through four."). At bottom, the ALJ provided more than a mere scintilla of relevant evidence in support of his finding that Plaintiff could sit for six hours in an eight-hour workday. *See, e.g., Garret v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 163-64 (3d Cir. 2008) (finding that ALJ's RFC was based on substantial evidence where ALJ provided comprehensive discussion of relevant medical evidence).

---

[8] Implicit in the ALJ's finding that Plaintiff could perform sedentary work is the finding that Plaintiff could sit for six hours in an eight-hour workday. S.S.R. 96-9p.

Second, Plaintiff asserts that the ALJ's finding at step four that Plaintiff could stand or walk for two hours in an eight-hour workday is not based on substantial evidence.[9] (Pl. Br. 27-28). Plaintiff's assertion is inapposite. The ALJ supported his finding by discussing the relief that Plaintiff received from her pain medication and the conservative treatment Plaintiff received for her pain. (R. at 18-19). The ALJ also discussed the social security office representative's observation that Plaintiff had no apparent difficulty standing and Plaintiff's broad spectrum of routine activities. (*Id.*). Moreover, the ALJ indirectly refuted Plaintiff's assertion that her degenerative joint disease in her right knee and obesity prevented her from standing or walking for two hours in an eight-hour workday. He did so by noting that Plaintiff was "ambulatory, without any hand-held assistive device and at most mildly antalgic gait," and that an MRI of Plaintiff's right knee from February 2005 was "normal." (*Id.* at 18). It is of no consequence that another finding was possible based on this evidence. *Hartranft*, 181 F.3d at 360 (citations omitted) (noting that Court may not set aside ALJ's decision "even if [it] would have decided the factual inquiry differently."). Therefore, the Court finds that the ALJ's finding that Plaintiff could stand or walk for two hours in an eight-hour workday is based on substantial evidence.

Third, Plaintiff asserts that the ALJ's RFC is not based on substantial evidence because no restrictions are specifically attributable to Plaintiff's obesity. (Pl. Br. 10). To the contrary, the ALJ's RFC limited Plaintiff to sedentary work and the ALJ explicitly noted that Plaintiff's "excess body weight," along with her other impairments, caused the ALJ to give "limited weight" to some of the Disability Determination Services medical consultant's opinions. (R. at 17, 21). The ALJ further evinced his consideration of Plaintiff's obesity at step four by

---

[9] Implicit in the ALJ's finding that Plaintiff could perform sedentary work is the finding that Plaintiff could stand for two hours in an eight-hour workday. S.S.R. 96-9p.

discussing Plaintiff's asthma and hypertension. (*Id.* at 19). Accordingly, Plaintiff's assertion that the ALJ's RFC's failed to account for her obesity lacks merit.

Fourth, Plaintiff asserts that the ALJ's RFC finding that Plaintiff "can only understand, remember and carry out simple instructions" is not based on substantial evidence because it disregards the ALJ's step three finding that Plaintiff has "moderate limitations" in concentration, persistence, and pace. (Pl. Br. 5-7). Plaintiff's assertion is invalid. The Third Circuit has held that an ALJ's assessment that a claimant is limited to "simple, routine tasks," an assessment that is analogous to that at issue here, adequately accounts for moderate limitations in concentration, persistence, and pace. *See McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008) (ALJ accounted for moderate limitations in concentration, persistence, and pace in hypothetical question to vocational expert by restricting claimant to simple, routine tasks); *see alo Menks v. Astrue*, 262 F. App'x 410, 412 (3d Cir. 2008) (same).

Finally, Plaintiff apparently asserts that the ALJ's RFC assessment is not based on substantial evidence because he did not find that Plaintiff's carpal tunnel syndrome limited her ability to perform gross manipulation (handling) with her right hand. (*See* Pl. Br. 11-12, 28-29). The Court rejects Plaintiff's assertion. Of note, Plaintiff did not list carpal tunnel syndrome as a condition that limited her ability to work in her application for benefits. (R. at 129). Plaintiff has also not pointed to any evidence in the record that demonstrates that her carpal tunnel syndrome necessarily impacted her ability to perform gross manipulation. *See Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) (citation omitted) (rejecting plaintiff's argument that pain was disabling where plaintiff referred to "only his testimony" because "[i]mportantly, [plaintiff] does not point to any relevant medical opinion that supports his allegations that his pain and exertional limitations are more severe than the ALJ found them to be."). The medical

evidence in the record, instead, provides support for the ALJ's implicit finding that Plaintiff's carpal tunnel syndrome did not impact her ability to perform gross manipulation. As noted by Defendant, Dr. Al-Salihi's May 17, 2011 assessment of Plaintiff's ability to perform work related physical functions states that Plaintiff's impairments did not affect her ability to perform handling. (R. at 372). While the ALJ did not explicitly mention this particular statement made by Dr. Al-Salihi, he did acknowledge and discuss Dr. Al-Salihi May 17, 2011 assessment at step four. Specifically, the ALJ noted that Dr. Al-Salihi's assessment was "consistent in certain respects" with the RFC finding. (*Id.* at 20). Additionally, the ALJ noted at step four that the social security office representative that helped Plaintiff complete her application observed that Plaintiff had no apparent difficulty using her hands. (*Id.* at 18).

C.    Whether the ALJ's Step Five Finding is Based on Substantial Evidence

Plaintiff contends that the ALJ improperly denied benefits at step five by relying solely on the framework of the grid rulings. (Pl. Br. 3, 30-36). Because the ALJ found that Plaintiff had three severe impairments that were nonexertional in nature—depression, obesity, and carpal tunnel syndrome—Plaintiff argues that the ALJ was required to take testimony from a vocational expert. (*Id.*). Defendant counters that vocational expert testimony was not required in this case because the ALJ properly "used SSR 85-16 and SSR 96-9p as guidance in finding that Plaintiff's capacity for the full range of unskilled, sedentary work was not significantly compromised by her non-exertional restrictions . . . ." (Def. Br. 15-16).

Exertional limitations refer to those that affect a claimant's "ability to meet the strength demands of jobs . . . for sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 404.1569a(a). Nonexertional limitations refer to any other limitations, including a claimant's postural limitations (her ability to stoop, climb, balance, kneel, crouch, and crawl) and

her environmental limitations (her need to avoid concentrated exposure to hazards such as machinery and heights). *Id.*; S.S.R. 96-9p. In *Sykes v. Apfel*, the Third Circuit held:

> [I]n the absence of a rulemaking establishing the fact of an *undiminished occupational base*, the Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to make official notice of this fact.

228 F.3d 259, 261 (3d Cir. 2000) (emphasis added). The Third Circuit has clarified that "if the [Commissioner] wishes to rely on a [Social Security Ruling] *as a replacement for a vocational expert*, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Poulos*, 474 F.3d 88, 94 (3d Cir. 2007) (emphasis added).

Here, the social security rulings cited by the ALJ clarify that Plaintiff's nonexertional impairments did not significantly erode her sedentary occupational base. To begin with, S.S.R. 85-15 clarifies that Plaintiff's need to avoid concentrated exposure to dust did not significantly erode her sedentary occupational base. S.S.R. 85-15 ("Where a person has a medical restriction to avoid excessive amounts of . . . dust . . . the impact on the broad world of work would be minimal . . . ."). S.S.R. 85-15 also clarifies that Plaintiff's ability to do only occasional ramp or stair climbing did not significantly erode her sedentary occupational base. S.S.R. 85-15 ("Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad range of work.").

S.S.R. 96-9p clarifies that Plaintiff's inability to do any crouching or ladder, rope, or scaffold climbing did not significantly erode her sedentary occupational base. S.S.R. 96-9p ("[R]estrictions related to . . . climbing ladders, ropes, or scaffolds . . . [or] crouching . . . would

not usually erode the occupational base for a full range of unskilled sedentary work."). S.S.R. 96-9p also clarifies that Plaintiff's ability to do only occasional kneeling or crawling did not significantly erode her sedentary occupational base. S.S.R. 96-9p ("[R]estrictions related to . . . kneeling . . . or crawling would not usually erode the occupational base for a full range of sedentary work."). Furthermore, S.S.R. 96-9p clarifies that Plaintiff's ability to do only occasional balancing on narrow, slippery, or erratically moving surfaces did not significantly erode her sedentary occupational base. S.S.R. 96-9p ("If an individual is limited in balancing only on narrow, slippery, or erratically moving surfaces, this would not, by itself, result in a significant erosion of the unskilled sedentary occupational base."). Additionally, S.S.R. 96-9p clarifies that Plaintiff's ability to do only frequent (as opposed to constant) fingering did not significantly erode her sedentary occupational base. S.S.R. 96-9p (noting that "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions," but not stating that perfect use is required). According to S.S.R. 96-9p, Plaintiff's need to avoid concentrated exposure to temperature extremes, wetness, humidity, or hazards such as unprotected heights or dangerous moving machinery did not significantly erode her sedentary occupational base. S.S.R. 96-9p ("[F]ew occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, . . . humidity . . . , or unusual hazards."). Moreover, S.S.R. 96-9p clarifies that Plaintiff's ability to understand, remember, and carry out simple instructions did not significantly erode her sedentary occupational base. S.S.R. 96-9p (noting that the ability to understand, remember, and carry out simple instructions is generally required by competitive, remunerative, unskilled work). Lastly, S.S.R. 96-9p clarifies that Plaintiff's ability to do only occasional stooping did not significantly erode her sedentary occupational base. S.S.R. 96-9p ("[R]estriction to occasional stooping

should, but itself, only minimally erode the unskilled occupational base of sedentary work); *see also Breslin v. Comm'r of Soc. Sec.*, 509 F. App'x 149, 155 (3d Cir. 2013) (citing S.S.R. 96-9p for proposition that sedentary occupational base is not eroded by ability to stoop occasionally).

## IV.  CONCLUSION

The Court has reviewed the entire record and, for the reasons discussed above, finds that the ALJ's determination that Plaintiff was not disabled was supported by substantial evidence. Accordingly, the ALJ's decision is affirmed.  An appropriate order accompanies this opinion.


DATED: January 6, 2014

_____
JOSE L. LINARES
U.S. DISTRICT JUDGE